BANK OF VANDUSER, Appellant, v. WELLS-FARGO CO., Respondent.

St. Louis Court of Appeals, argued and submitted April 21, 1909, opinion filed June 22, 1909.

COMMON CARRIERS: Delivery of Freight: Warehouseman: Prima Facie Case. In an action against an express company for failing to deliver to the consignee a package of money carried by it, the evidence is examined and held sufficient to sustain a verdict for the defendant, where the issue was whether the defendant had used proper diligence to deliver the package on its arrival at destination, and whether the carrier was a warehouseman when the package was lost by robbery. In such case the instructions are set out at length and held to properly declare the law.

Appeal from Scotland Circuit Court.—*Hon. Henry C. Riley*, Judge.

AFFIRMED.

*W. H. Miller* and *Ely, Kelso & Miller* for appellant.

*Ed. L. Drum* and *Frank Kelly* for respondent.

STATEMENT.—This is an action against defendant as a common carrier, for its failure to deliver an express package consigned to plaintiff, at Vanduser, containing $500 in silver coin. Plaintiff is a banking corporation, doing business at Vanduser, and defendant is an express company and as such a common carrier of goods, wares, money, etc., for hire, and, at the time of the transaction involved, had an office and agent at Vanduser. It is averred in the petition that on the 14th day of December, 1907, the Southeast Missouri Trust Company delivered to defendant, at its office in Cape Girardeau, two packages, one containing $2,500 in currency, the other $500 in silver coin, both consigned to the plaintiff bank at Vanduser; that the defendant

accepted the packages and for the consideration then paid by plaintiff, agreed to deliver them to plaintiff at its place of business in Vanduser, and that the defendant express company violated its agreement in that it failed, although having collected the charges, to deliver to plaintiff the $500 package of silver coin, shipped and consigned as above stated; that demand had been made for the delivery of the package or its equivalent in money, which was refused, and judgment is prayed for the $500, with interest from the 15th of December, 1907, the date of the demand, together with costs.

The answer, admitting the incorporation of the defendant and that it is engaged in business as a common carrier for hire and that it received from the Southeast Missouri Trust Company, on December 14th, at Cape Girardeau, Missouri, two packages, "the value and contents of which packages this defendant has no knowledge or information sufficient to form a belief," and denying each and every other allegation in the petition not expressly admitted, or any knowledge or information thereof sufficient to form a belief, by way of special defense sets up the following:

"Further answering and for special defense defendant says and alleges that on the 14th day of December, 1907, the Southeast Missouri Trust Company, by and through its agent for and on behalf of the plaintiff and at the plaintiff's direction and instruction, brought to the office of defendant in Cape Girardeau, Missouri, two packages, said to contain money, one to the amount of $2,500 and the other said to contain $500, and requested the defendant to carry the same on the said day, to-wit: December 14th, 1907, to plaintiff at Vanduser, Missouri, and that defendant, by its agents refused to accept said packages for conveyance on said day for the reason that defendant had no way to care for and keep money at Vanduser as defendant had no iron safe there, and it being Saturday the money would have to lay over until Monday for delivery, as said package could not be

delivered to plaintiff on the evening of December 14th, as it would arrive at Vanduser after banking hours, whereupon the said agent of the Southeast Missouri Trust Company, for and on behalf of this plaintiff, represented to defendant that plaintiff had instructed and directed that the said packages be shipped on the said evening of December 14th, and that if defendant conveyed the same to Vanduser on the evening of December 14th, plaintiff would receive the same upon its arrival at Vanduser; whereupon this defendant relying upon the said promise that plaintiff would receive and accept said packages upon their arrival at Vanduser, and without which promise defendant would not have accepted said packages for conveyance on said evening, received the same and carried them to Vanduser by the first, usual and only train leaving Cape Girardeau for Vanduser, on said day, by which defendant could convey the same, which train arrived at Vanduser at its usual time on December 14th, and that said packages were carefully and safely carried to its office and place of business in Vanduser on said day, under a contract, the ninth clause of which is as follows:

" 'The company shall not be required to deliver said property except within its present delivery limits unless herein otherwise agreed and specially paid for. At points where the company has no delivery service, the consignee shall receive said property at the office of the company.' That defendant has no delivery service to deliver packages at places of business or at residence of consignee at Vanduser, as Vanduser is a small place of few inhabitants and a small amount of business done there by defendant, and it therefore became and was the duty of the plaintiff under the law and under the contract and agreement by the shipper, to receive said packages at defendant's office and place of business upon their arrival.

"That the plaintiff's cashier was present at the depot of the railroad and the defendant's office and place

of business upon the arrival of said packages, or in a few minutes afterward, and knew that said packages arrived on said train and he failed and neglected to call for and receive them; that defendant's agent was ready and willing to deliver said packages and offered them to the cashier of plaintiff and requested him to accept and receive the same, which the said cashier declined and refused to do, whereupon defendant's agent offered the same to L. P. Woodward, one of the directors and vice-president of plaintiff bank, who was assisting in the managing or conducting of the same, and that the said L. P. Woodward refused to accept the same whereupon defendant's agent being unable to get plaintiff to accept said packages, and having no iron safe in which to place the same, and being unable to carry the package said to contain silver on his person, placed the said package, with permission and consent of L. P. Woodward, in the iron safe of the Farmers Mercantile Company of Vanduser, Mo., and in its brick building and place of business and under the care and custody of the said L. P. Woodward, the said iron safe and building being a reasonably safe place and the best known to defendant's agent in the town of Vanduser, in which to store and leave said package, for the plaintiff."

A reply was filed, denying the new matter generally, denying knowledge or information sufficient to form a belief as to whether defendant was a warehouseman, as averred, but averring that if defendant was a warehouseman, it did not exercise that degree of care and caution which an ordinarily prudent person would have exercised under like circumstances in procuring a safe and proper place in which to keep and preserve the express package, but on the contrary was negligent and careless in selecting the place it did, and that the loss of the package was due to the carelessness of the defendant.

There was a trial before a court and jury. In the statement of plaintiff's counsel, it is set forth that it is

admitted that defendant received at its office in Cape Girardeau, Missouri, on the 14th of December, 1907, the express package containing $500 in silver coin, consigned to plaintiff, collected its charges for carrying the same from Cape Girardeau to Vanduser, and that the same was lost at Vanduser before delivery to plaintiff. Counsel for plaintiff in their statement of the case have covered it so completely and fairly that we cannot do better than adopt it, calling attention to the only criticism made of it by counsel for defendant.

"The money in controversy was money received from the shareholders of the plaintiff bank, which had not opened for the transaction of business at the time of this shipment.   As the money was paid in by the several shareholders for the stock of the plaintiff bank, it was deposited with the Belle City Bank, as the depository of plaintiff bank, pending the organization.   The Belle City Bank deposited the money with the Southeast Missouri Trust Company, at Cape Girardeau.

"A. L. Biffle was the cashier of the Belle City Bank, and A. L. Biffle is the man who directed the Southeast Missouri Trust Company to ship the money by express on December 14th, 1907, to the plaintiff bank at Vanduser, Missouri.    On this date, December 14th, 1907, which was Saturday, the plaintiff bank had not fully organized, it had no cashier, and in fact no one in the town of Vanduser authorized to accept and receipt for the money.    Reece Allen expected to be selected as cashier, and understood that the bank would not open for business before January 1st, 1908.    Allen was in Cape Girardeau on the 14th day of December, 1907, on his way to St. Louis, and called at the Southeast Missouri Trust Company's offices, and it was there that he learned that the money was to be shipped on that day to Vanduser.    Upon learning that the funds of plaintiff were going out by express at 2:30 p. m. on that day, Allen abandoned his contemplated trip to St. Louis

and went to Vanduser on the same train that carried the express package in question.

"While Allen, at this time, as stated, had not been employed as cashier of plaintiff bank, yet it seems had an understanding with the organizers that he would be selected as cashier as soon as the plaintiff bank was ready to open for business; he had visited Vanduser on Friday, December 13th, to ascertain when the bank would be ready for his services, and was advised by the persons agreed upon for president and vice-president of plaintiff bank, that organization would not be perfected until the first of January, 1908.   And the purpose of his trip to Vanduser on the evening of the 14th of December was to consult the board of the plaintiff bank as to when they would open.

"After the train arrived at Vanduser the express package was turned over to J. W. Greer, the agent of the defendant at that place.   After the train left, Greer had a conversation with Allen about the money, in which Allen informed Greer that he was not authorized to represent the plaintiff, and had no authority to sign for the money.   Greer says that he offered the money to L. P. Woodward, as the vice-president of plaintiff bank; that Woodward said 'I can't sign for it, because I haven't any authority to.'

"After Greer learned from Allen and Woodward that neither of them had any authority to receipt for the money, he then makes the following statement as to what he then said and did in the premises:

" 'I said, I don't know what I am going to do'; I will have to do something to get rid of that or else have some safe keeping for it; well, he (Allen) said, if you are mind to you can take that over there and put it in the safe (meaning plaintiff's bank safe) all of it; I just opened it awhile ago and I am the only one that knows the combination; I said I don't believe that would be a very safe idea; there wouldn't be but two; I had rather have a few more witnesses and know where

I put it; when the local came—this was about 4:35—
and his train came and he left and I went down to sup-
per and took the currency with me down to the house
and put it in my trunk and after I came back from
supper I went over to the depot and the Farmers' Mer-
cantile Company in the back door and asked Mr. Wood-
ward; I said you fellows refused to take that money,
I would like to put it over here in the safe for safe keep-
ing over Sunday; I don't like to carry it down to the
house; and he said well that would be all right, of
course; we will not be liable for the money, you will not
hold us responsible; I said no, sir, I haven't got any place
to keep it, I haven't got any safe; so I put it over there
and Sunday night the safe was blown open; the first
thing I knew he came and told me Monday morning
about the safe, it was cracked; I just came up and he
said the safe was blown open; and the money gone, and
while it was all—and I went up to the depot and wired
the Express Company about it then.' "

The only exception taken by counsel for defendant
to this statement is that part of it in which it is set
out that the plaintiff bank had not been fully organized
and had no one in the town of Vanduser authorized to
accept the money at the time of its arrival there in
charge of the express company, defendant.· The at-
torneys for defendant, excepting to that statement, in-
sist that a Mr. Woodward had been elected vice-presi-
dent before that date, he residing at Vanduser and was
there carrying on a store, in the safe of which the sil-
ver was deposited by the agent of the express company.
The evidence of Mr. Woodward himself confirms this
claim of defendant's counsel and there is no controversy
over the fact that the $500 in silver was placed in the
safe of Mr. Woodward's store at Vanduser on the even-
ing of Saturday, the 14th, and it was there when the
store was entered by burglars, the safe blown open and
the silver stolen. The clause in the statement of plain-
tiff's counsel, to the effect that it seems that Mr. Allen

had an understanding with the organizers of the bank that he would be selected as cashier, is also challenged, it being contended by counsel for the defendant that the testimony of Mr. Woodward shows that Mr. Allen had come to Vanduser the evening of the 14th to see Mr. Woodward about the business of the bank, of which he was to be cashier, it having been agreed, said Mr. Woodward, that if he filled the bill, as their minutes would show, that is, if he came up to the requirements, he was to be the cashier. It was in evidence that Mr. Allen was actually elected cashier on the evening of the 16th, Monday, and he testified that it had been generally understood some time before that, that he was to be cashier but he was not formally elected until the 16th.     It appears the bank was actually opened for business on the 16th of December.     It was also insisted by counsel for the defendant that a presumption arises, from the evidence in the case, that Mr. Woodward was the proper person to accept the money, he being vice-president of the bank and at Vanduser the evening it arrived there.     The statement of plaintiff's counsel, made in their briefs that it was the rule of the defendant not to leave packages containing money with its agents at Vanduser, unless they could be delivered on the same day that they were received, and that in case valuable packages could not be delivered, it was a rule or custom of the defendant to return the package to the forwarding office, is also challenged as unsupported by any evidence in the case.     We are compelled to say that the claims of defendant's counsel in respect to these points are borne out by the abstract of the record, that is to say, there is evidence tending to show that Mr. Woodward was the vice-president of the plaintiff and was at Vanduser the Saturday evening that the package arrived there and knew of its arrival, and that delivery of it to him was offered by the agent of defendant at Vanduser that evening, and he declined to accept it, but told the agent he could put it in the safe in his

store, and that Mr. Allen was the gentleman who had
been before then selected as cashier but was not to en-
ter upon his duties until the following Monday or a
day or two after Saturday; that he knew of the arrival
of the money that Saturday evening, and that he was at
Vanduser that evening on the business of the bank,
had turned back from a contemplated trip to St. Louis
and went down to Vanduser on the train on which he
knew that the money was being shipped, and that the
reason he turned back and went to Vanduser instead of
St. Louis was that he then learned the bank was to open
on the 16th instead of the 30th as he had expected.
There is no evidence in the record to show any rule of
the defendant as to the leaving or not leaving packages
with its agents at Vanduser, unless they could be de-
livered on the same day they were received.   Apart
from these variances there is no discrepancy or dis-
pute between counsel as to the testimony in the case.

At the close of the testimony, the court, at the re-
quest of plaintiff, gave three instructions as follows:

"1.   The court instructs the jury that if from the
evidence, you find and believe that the defendant re-
ceived from the Southeast Missouri Trust Company, on
the 14th day of December, 1907, a package of money con-
taining $500 and for a consideration agreed to trans-
port the same from Cape Girardeau to plaintiff at Van-
duser and there to deliver to plaintiff or its representa-
tives and that it failed to so deliver the same, then your
verdict will be for the plaintiff in the sum of $500, to-
gether with 6 per cent interest from the time it should
have been delivered to this date.

"Unless you further find that plaintiff or its repre-
sentatives knew of the arrival of said money at the point
of destination in time to have received same before its
loss, in that event defendant became a warehouseman
and ceased to be an insurer of the goods and is not liable
as a carrier, but you are further directed that if you
find and believe from the evidence that defendant was a

warehouseman, then it was bound to exercise ordinary care in the safe keeping of said money until it was received by the bank or returned to the consignor; and if you find that defendant did not exercise that ordinary care, your verdict will be for the plaintiff as above.

"2.    You are further instructed that ordinary care as used in instruction No. 1, means the degree of care and prudence which a careful business man would exercise in handling his own business; and in determining whether defendant exercised such care you should consider the conditions existing at the point of delivery; the character of the consignment together with all the other facts and circumstances proven in the case; and if in on full and fair investigation you find that defendant did not exercise that degree of care which an ordinary prudent business man under like circumstances would have exercised, your verdict will be for the plaintiff.

"3.    The jury are further instructed that:  although the jury may find and believe from the evidence that the express package in question arrived at the town of Vanduser on time, and although the jury may find and believe from the evidence that plaintiff knew of the arrival of said express package, and could have received the package from defendant at the time of its arrival, but failed to do so, yet under the law and pleading in this case, the defendant is still liable to the plaintiff for the loss of said package, unless you further find and believe from all the facts and circumstances shown by the evidence that the defendant used proper care in selecting a suitable and safe place for depositing said express package.

"And in this connection the jury are instructed that in selecting a place to deposit said express package, the defendant was required to use ordinary care to ascertain that the place selected was safe and suitable, and if you find from the evidence that the place selected for depositing said express package was known to defend-

ant to be unsafe, or by the use of ordinary care on the part of the defendant it could have ascertained that the place selected was unsafe or not suitable for the protection and safety of said express package, and that by reason of depositing said package in a place so selected, it was lost or stolen, then your finding should be for the plaintiff."

At the request of the defendant the court gave four instructions, numbered 3, 4, 5, and 6, as follows:

"The court instructs the jury that:   In this case the Southeast Missouri Trust Company in making the shipment of $500 sued for by plaintiff, acted for and on behalf of plaintiff, and any contract, agreement or representation made to the defendant by the Trust Company in regard to the receipt of the money by plaintiff at Vanduser, was in law made for and on behalf of the plaintiff and it is now bound by the same, and if you believe and find from the evidence that at the time the said package was offered to the defendant for transportation it declined to receive it for conveyance on the evening December 14th, 1907, because it was Saturday and it would arrive at Vanduser after banking hours and could not be delivered that evening and that the agent of the Trust Company then represented and told the agent of the defendant that the plaintiff would accept and receive it upon its arrival at Vanduser and that the defendant relied upon said representation and that had such representation not been made, defendant would not have accepted the package for transportation to Vanduser that evening; and if you also believe the defendant carried the package to Vanduser on the evening delivered to it as directed, that it arrived at Vanduser at the usual time trains arrived there from Cape Girardeau and was placed at the defendant's office and place of business and that plaintiff failed to call for the same in a reasonable time after the arrival or if you believe and find that defendant's agent offered it to the vice-president of defendant

and he refused to accept it and that then the defendant's agent placed the money in an iron safe to secure it for the plaintiff and that such iron safe was a reasonable and safe place in which to store said package and that it was lost or stolen from the safe, then your verdict will be for the defendant.

"The court instructs the jury that if you believe and find from the evidence in this case that the plaintiff ordered the money sued for to be shipped to it at Vanduser, Mo., on the evening of December 14th, 1907, and it was shipped and that plaintiff knew that the train upon which it would have to be shipped arrived at Vanduser about four o'clock, in the evening, and if you find that it was so shipped; that the train arrived at its usual time, and that the defendant did not maintain a delivery system at Vanduser, then you are instructed that it became and was the duty of the plaintiff to be on hand at the time of the arrival of the money and to receive the same, and if plaintiff knew of the arrival of the money and failed to call for it, or if it was offered to plaintiff and he failed or refused to take it, then the only duty resting upon defendant was to take reasonable care of the money for the plaintiff, and if you find plaintiff did take reasonable care of it, your verdict will be for the defendant. By reasonable care is meant such care as a reasonably prudent man would take of his own property under like circumstances.

"The court instructs the jury that you are not to determine the question of carelessness on the part of defendant in caring for money by placing it in the iron safe of the store by the fact that the $500 was stolen, nor are you to determine it from the fact that it might not have been stolen or lost had it been placed elsewhere, but the question of its carelessness in placing the money in the safe is to be determined by what a reasonably prudent man would have done concerning his own affairs under like conditions or circumstances, as shown from a consideration of all of the evidence in this cause.

"The court instructs the jury that the defendant's duty and liability as a carrier ceased after it safely carried the packages to defendant's office and place of business in Vanduser, and it then became and was the duty of the plaintiff to call for and receive them within a reasonable time after plaintiff knew of their arrival, and that plaintiff could not impose upon defendant the responsibility of guarding and caring for the packages until it suited plaintiff's convenience to receive them, and if plaintiff left them with defendant's agent after it had an opportunity and reasonable time considering the value of the packages and their character, to take them away, it did so at plaintiff's risk, and if you believe defendant's agent used ordinary care in storing the packages in the place he did, then the plaintiff cannot recover.    By ordinary care is meant such care as an ordinarily prudent man would exercise under like condition and circumstances."

Plaintiff excepted to the giving of these latter instructions and, a verdict being returned in favor of defendant, in due time filed its motion for a new trial, assigning as reasons that the verdict is against the evidence, is against the law, against both the evidence and the law, and that the court erred in admitting irrelevant, incompetent and immaterial evidence offered by defendant and objected to by plaintiff; that it erred in giving the instructions given on behalf of defendant and in excluding competent evidence offered by plaintiff.    The motion was overruled, exception duly saved, appeal prayed for, allowed, bill of exceptions duly signed, filed and entered of record, and the case is here on the appeal of plaintiff.

REYNOLDS, P. J. (after stating the facts).—The abstract of the record, the statements and briefs of counsel for each party and their arguments, are presented to this court in such admirable shape and lawyer-like manner, that it is a pleasure to the court to deal with them.    Our examination of the record satisfies us that

the case was fairly presented to the jury, and as it is not disputed by the learned counsel for plaintiff that there is evidence to support it, we are relieved from the necessity of analyzing it, or setting it out in detail. The statement of the facts we have made, adopting in the main that of counsel for plaintiff, embodies them fully enough to show there was ample evidence to sustain the verdict and that the case was submitted to the jury on instructions that covered it and are correct in law, is apparent. In fact we do not understand that their correctness is challenged by counsel for plaintiff as legal propositions nor is it claimed that they are not justified by the evidence in the case, save in one respect. Counsel submit that under the facts in the case, the court erred in instructing the jury that when defendant deposited the packages in the store company's safe, it did so at plaintiff's risk. The statement, it is claimed, was calculated to mislead the jury, and it is claimed this clause, taken in connection with the contract complained of, and the recitals in instruction number 5, given at instance of defendant, are clearly errors. This contract referred to was on the back of the receipt of the express company. We do not understand that this endorsement was treated by the court, in its instructions to the jury, as a limitation of the liability of the carrier. When the receipt was offered, it was objected to because it had not been shown that the bank, plaintiff, had any knowledge of this condition, and because it had not been properly pleaded in the answer. It appears to have been on the back of the receipt given by defendant to the Trust Company when the latter left the money to be sent on to the plaintiff. It was clearly a part of the receipt, and that the Trust Company was acting as agent of plaintiff in forwarding the money seems to us very clear. The instruction complained of is not subject to the objection made. An examination of the other testimony objected to, does not lead us to conclude that reversible error was committed in admitting it. Indeed we think the

case was fairly tried.    Considering the record in the case, including the pleadings, the testimony, the rulings on the admission of the testimony, and the instructions, we cannot say that there was any reversible error, any error to the manifest prejudice and harm of plaintiff, committed.    So believing, the judgment of the circuit court is affirmed.    All concur.

